UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

UNITED STATES OF AMERICA,      )
                               )
        Plaintiff,             )
                               )
v.                             )        CASE NO. 00-6259-CR-DIMITROULEAS
                               )
GARY D. HERTZ,                 )
                               )
        Defendant.             )

## DEFENDANT'S SENTENCING MEMORANDUM AND INCORPORATED NOTICE OF REQUEST FOR DOWNWARD DEPARTURE PURSUANT TO USSG §5K2.20, ABERRANT BEHAVIOR

The Defendant, Gary D. Hertz, through undersigned counsel, hereby files this Sentencing

Memorandum together with notice of his request that the Court depart downward in imposition

of sentence to a term of probation with special conditions, pursuant to USSG §5K2.20, which

permits a downward departure when the defendant's criminal conduct constitutes aberrant

behavior. A downward departure on this basis is an "encouraged" departure under the

Guidelines. As a special condition of such probation, Mr. Hertz would complete all appropriate

counseling and therapy.

Here, Mr. Hertz's commission of this crime, possession of images of child pornography

on his computer, was aberrational within the meaning of §5K2.20, as it was a very marked

departure from his otherwise productive, law-abiding life. Mr. Hertz has never been involved in

any criminal activity. As the attached letters from family and friends show, he is a caring and

responsible father, family-member and friend, and has always done his best to live his life

morally and lawfully. His viewing of pornography, downloaded from the internet, was a short-



term response (combined with alcohol and substance abuse) to a period of terrible psychological,

emotional and financial stress when, simultaneously, his marriage began falling apart and his

businesses collapsed, leaving him in substantial debt. Suffering from clinical depression, Mr.

Hertz turned to alcohol and substance abuse and the viewing of pornography as a means of

escape from his problems. As the attached report from Dr. Leonard Haber shows, Mr. Hertz is

not a danger to the community, there is no indication of any deep-rooted deviancy, and he meets

the criteria for this sentencing departure. Mr. Hertz is now in therapy and counseling, both for

his depression and emotional problems and for alcohol and substance abuse. (He began therapy

immediately after a police search of his offices led to the discovery of the pornography on his

computer.) His therapist, Dr. Victoria Besalel, reports that he is making genuine progress in

dealing with his problems and that interruption of his treatment at this juncture would be

detrimental to him. A downward departure to probation would permit him to proceed with

therapy and counseling and to continue rebuilding his life.

## I. THE FACTS OF THIS CASE

Gary Hertz is 49 years old. He was born in Miami and now, due to his financial

difficulties, lives with his mother in Pembroke Pines. He has two daughters, ages

19 and 21, both of whom are in college. He is now separated from his second wife.

Mr. Hertz's education and work background are in accounting. For many years he

worked in-house at health care companies, doing accounting and financial services.

In 1994, Mr. Hertz opened his own consulting firms which performed a variety of

support functions for Medicare providers of mental healthcare. These were generally companies

2

which managed outpatient facilities and were heavily dependent on Medicare reimbursement. Mr. Hertz's firms provided accounting and financial services, the staffing of personnel (*e.g.*, nurses, counselors, social workers) for these facilities, as well as assistance in compliance with Medicare/Medicaid reporting requirements and regulations.

Within a few years, many of these clinics began experiencing serious financial problems, due to changes in Medicare regulations and reimbursement practices. Mr. Hertz's firms had large receivables from these companies, and he borrowed heavily to keep his own companies in operation. As these clinics went out of business in increasing number, Mr. Hertz's firms suffered considerable losses. By early 1999, Mr. Hertz's own businesses were going under. He had over $3 million in uncollectible receivables and was personally over a $1 million in debt. At the same time, his recent second marriage was failing. (His first marriage had ended in divorce in 1992, after 18 years.) Unable to cope with the accumulating stress, he began drinking heavily and using cocaine. At this same time, he began downloading and viewing pornography from the internet as a means of escape. He did this on his office computer and believed that no one was aware of it.

In May 1999, employees at his firm accidentally discovered pornographic images on his office computer and reported it to the Hollywood Police Department. On May 29, 1999, the FBI searched his offices and seized the computer.

Within a week of the search, Mr. Hertz entered psychological counseling and psychiatric treatment. He began taking Prozac, an antidepressant. Shortly thereafter, Mr. Hertz closed his businesses. In Fall, 1999, Mr. Hertz and his wife moved to North Carolina, to start over. In

3

October 2000, Mr. Hertz returned to this District, alone. He resumed therapy with Dr. Besalel, his psychologist. Mr. Hertz continues working as a consultant in the healthcare field.

On November 3, 2000, Mr. Hertz pled guilty before this Court to a one-Count Indictment charging him with a violation of 18 U.S.C. §2252A(a)(5)(B), possession of child pornography on a computer.

According to Dr. Besalel, Mr. Hertz's psychologist, he is responding well to treatment and making progress. (Attachment A and PSI, at 11- 12.) It is her opinion that interruption of that treatment at this point would be detrimental. He is also participating in an outpatient program at Spectrum Programs for drug treatment. Rhonda Marks, his counselor at Spectrum, reports that he has been attending classes faithfully, is extremely well-motivated and is doing very well. (Attachment B and PSI, at 13.) Ms. Marks also requests that Mr. Hertz be permitted to complete the treatment in order to increase "the chances of successful prognosis including decreasing chance of recidivism."

In late November 2000, Mr. Hertz was evaluated by Dr. Leonard Haber. (Attachment C.) Dr. Haber found no indication of significant psychopathology. It is his opinion that Mr. Hertz has a low risk potential for violence or dangerousness and is a low risk for recidivism. He reports that Mr. Hertz is remorseful and understands that his conduct was harmful and wrong. Mr. Hertz appreciates that he has inappropriately coped with stress (beginning with his response to his brother's suicide in 1984) in his life and understands the "certainly painful consequences of a repeat offense." (Report, at 5.) Dr. Haber concludes that "Mr. Hertz's criminal behavior is deemed to have been aberrant behavior engaged in at a time of significant financial, marital and

4

lifestyle stress." (Report, at 6.) He further concludes that Mr. Hertz meets the criteria for a

downward departure based on §5K2.20 (Aberrant Behavior.)

Mr. Hertz is now scheduled for sentencing on January 12, 2001. The Probation Office

has determined that his total offense level is 16, which provides a sentencing range of 21 - 27

months. Defendant has no objection to this determination or to any other factual findings of the

PSI.

## II. A DOWNWARD DEPARTURE IS WARRANTED.

A downward departure to a term of probation is warranted here since Mr. Hertz's

criminal conduct constitutes aberrant behavior. As a special condition of a term of probation,

Mr. Hertz would complete any required therapy and counseling which he has already begun or

which would be recommended by the Probation Office.

A court may impose a sentence outside the applicable guideline range if it finds that there

is a significant factor present which has not been taken into account in the formulation of the

guideline. Title 18, U.S.C., §3553(b) specifically provides that the court may depart if it finds

that there exists an aggravating or mitigating circumstance of a kind, or to a degree
not adequately taken into consideration by the Sentencing Commission in formulating
the guideline that should result in a sentence different from that described.

The decision whether and the extent to which a departure is warranted "rests with the sentencing

court on a case-specific basis." USCG 5K2.0. It is a decision which is committed to the court's

traditional exercise of discretion in sentencing. *Koon v. United States*, 518 U.S. 81, 97 (1996).

However, as the Supreme Court explained in *Koon*, "sentencing courts are not left adrift"

by the Commission. The Guidelines "provide considerable guidance as to the factors that are apt

5

or not apt to make a case atypical, by listing certain factors as either encouraged or discouraged

bases for departure." 518 U.S. at 94. Aberrant behavior is specifically considered by the

Sentencing Commission as an "encouraged" ground for downward departure under §5K2.20.[1]

As §5K2.20 states, "A sentence below the applicable guideline range may be warranted in an

extraordinary case if the defendant's criminal conduct constituted aberrant behavior."[2] Moreover,

the Commission specifically noted that when criminal conduct constitutes aberrant behavior,

"probation [may be justified] at higher offense levels through departures." USSG,§1A4(d).

The Guidelines recognize that aberrant behavior is not limited to a single act or event, but

may be a course of conduct of limited duration. As the Application Notes to §5K2.20 explain:

*"Aberrant behavior" means a single criminal occurrence or single criminal transaction*
*that (A) was committed without significant planning, (B) was of limited duration; and (C)*
*represents a marked deviation by the defendant from an otherwise law-abiding life.*

Here, Gary Hertz's conduct clearly meets this standard for "aberrant behavior." His

conduct in this case represents a marked and short-lived deviation from an otherwise law-abiding

life. The Defendant, now 49 years of age, has no prior criminal convictions or arrests, and no

prior involvement with, or interest in child pornography. At the time Gary Hertz possessed the

images, he was operating under significant mental and emotional stress. The convergence of

factors, including his failing second marriage, his failing businesses and his mounting financial

---

[1] As this policy statement on aberrant behavior as an "encouraged" ground for downward departure was only enacted on November 1, 2000, there is no case law interpreting it.

[2] §5K2.20 does not permit a departure in specified circumstances which clearly do not apply here. The disqualifying circumstances are:1) the offense involves serious bodily injury or death;2) a firearm was involved;3) the conviction is for drug trafficking; 4) the defendant has more than one criminal history point; and 5) the defendant has a prior conviction.

debt, led him to seek inappropriate ways of alleviating the accompanying feelings of depression,
loneliness and anxiety. As a result, the Defendant committed, without significant forethought or
planning,[3] this single criminal occurrence that was of limited duration.

The Defendant's clinical depressive and anxious states are documented in evaluative
reports by Dr. Leonard Haber and Dr. Victoria Besalel. See Psychological Evaluation Report by
Dr. Haber and PSI, paragraph 45, at p.11. As reported in the PSI, Dr. Besalel has been treating
Mr. Hertz for depression and anxiety resulting from his financial, marital and (now) legal
problems. She notes that "All of these problems contributed to his resorting to use
pornography." The psychological evaluation completed by Dr. Haber refers to the Defendant's
motivation for possessing the images as simply curiosity and his viewing of the pornography as a
means of mentally escaping his problems. Dr. Haber's report indicates that prior to this incident,
the Defendant had never seen child pornography, nor was he interested in such material. The
report further notes the Defendant has not since viewed or had any interest in child pornography.
See Report by Dr. Haber, p.4. Dr. Haber concludes that "[B]ased on psychological evaluation
and available information, Mr. Hertz' criminal behavior is deemed to have been aberrant
behavior engaged in at a time of significant financial, marital and lifestyle stress. Mr. Hertz
denied such behavior prior to or subsequent to the time span of the alleged offense." Dr. Haber
further recommends that the Court consider a downward departure based on §5K2.20. See
Report by Dr. Haber, p.6.

---

[3] The ease with which this crime may be committed should be noted. All that is required
is a computer with internet access.

7

The extent to which the commission of this crime was a "deviation" from Gary Hertz's

life is further shown by the letters from family and friends which are attached to this

Memorandum. (Attachment D.) All of the writers are aware that Mr. Hertz is before the Court

for sentencing for possession of child pornography. Nonetheless, all describe him as a decent,

generous and honorable person. Perhaps the most telling is the letter from his ex-wife, Cindy

Hertz, from whom he was divorced in 1992. She states:

> I believe I know Gary better than most people, and can be considered a reliable character
> witness for him. He is basically a very honest and responsible person, of good moral
> character. Although I am aware of the crime with which he is charged, and my opinion
> seems to be a direct contradiction, I am still standing firm on my belief. He has always
> been a good father to our daughters, was always prompt in his child support and alimony
> payments, and our daughters have always relied on him for moral support and guidance. .
> . . I know that Gary's mother and sisters have always depended on and looked up to him,
> knowing that he would always be there to help them through whatever troubles they
> might face. Of all the brothers and sisters (I was close to the family for a very long time,
> and knew both Gary's brothers before they died), I honestly believe that Gary was the
> least selfish and most giving of them all.

The Application Note to §5K2.20 further provides that in considering whether to depart

on the basis of aberrant behavior the court may consider: 1) the defendant's mental and

emotional conditions; 2) employment record; 3) record of prior good works; 4) motivation for

committing the offense; and 5) efforts to mitigate the effects of the offense. Taking all of those

considerations into account, this is a case in which the contemplated departure is warranted. As

discussed above, Gary Hertz engaged in this conduct at a time when he was clinically depressed

and unable to cope with stresses brought on by the simultaneous failures of his marriage and his

businesses. In addition, consideration of his employment record is relevant to appreciating how

devastating the failure of his businesses was to him. For most of his life, Gary Hertz had worked

8

for others. He had always met his financial obligations. For example, as Cindy Hertz notes in her letter, he always fulfilled all of his child support obligations. Now, for the first time in his life he was in debt and unable to meet his obligations. Moreover, these businesses were a significant departure for him, from being an employee to being an entrepreneur. Their failure meant having to start all over again.

Finally, Gary Hertz's efforts to come to terms with what he has done show that the departure is merited. In an effort to mitigate the effects of the offense conduct, immediately after his arrest on the instant offense, the Defendant sought help from a psychologist and a psychiatrist to learn how to cope with, and confront his depression and stress in more appropriate ways. Further, the Defendant made a full disclosure to the government regarding his conduct.

Thus, Gary Hertz has accepted full responsibility for his actions, acknowledged their wrongfulness and taken the necessary steps to prevent their recurrence. He continues with that counseling and therapy today. He has demonstrated a commitment to changing his behavior. Dr. Besalel reports that he is capable of genuine change and is making good progress in resolving the psychological problems which led to his commission of this offense. She writes:

> Since my last letter to you, Mr. Hertz has continued to be seen by me on a weekly basis. He has been conscientious in keeping his appointments and in following instructions which I have given him for dealing with his problems. I believe he is making genuine progress. He is a decent person who is capable of real growth and change. He has the capacity to move beyond the destructive behavioral patterns which led him to his current legal difficulties.

It is Dr. Bezalel's opinion that it is critical to Mr. Hertz that he be able to continue his therapy at this time. "Continuity in treatment is critical at this juncture. Therefore, it is essential that he continue the course of counseling and treatment which he has undertaken with me. Any

9

disruption at this time will be very detrimental to him."

Mr. Hertz is similarly doing well in the alcohol and drug treatment program at Spectrum.

Ms. Marks, his therapist, gives him the highest ranking in overall progress, attitude and level of

participation. She reports:

> Mr. Hertz has demonstrated a willingness to remain drug and alcohol free. Mr. Hertz
> appears extremely motivated for treatment, and has established a treatment plan which
> includes relapse prevention. As Mr. Hertz' therapist, I am respectfully requesting he
> continue with his treatment to increase chances of a successful prognosis, including
> decreasing chance of recidivism.

Incarceration is not needed to deter Mr. Hertz any further. As Dr. Haber concludes, Gary

Hertz fully appreciates the risks of any further illegal conduct. Indeed, incarceration will

interrupt the therapeutic programs which he is now participating in. Moreover, incarceration is

not required in order to protect the community. Dr. Haber finds no indication of any

psychological conditions which make him a danger to anyone.[4] Dr. Besalel concurs. As she told

the Probation Office,

> . . . Mr. Hertz has good relationships with his family, has good relationships with many
> friends and has good standing in the community. The behavior of pornography which he
> was charged with does not appear to be a deep-seated problem. He appears to be a
> friendly, likeable, honest, hard-working and goal driven person and in no way a menace
> to society.

These expert diagnoses and recommendations fully support a downward departure to probation.

---

[4] To the extent that is a possible concern, Mr. Hertz will be required to register as a sexual
offender in any community where he will reside, pursuant to 18 U.S.C.§4042.

UNITED STATES v. GARY D. HERTZ                                    CASE NO. 00-6259-CR-DIMITROULEAS

## CONCLUSION

The goal of sentencing is to ensure an appropriate sentence, given the circumstances of each individual case. 18 U.S.C. § 3553(a) and (b). The statute provides that the guidelines are to "reflect the general appropriateness of imposing a sentence other than imprisonment in cases in which the Defendant is a first offender who has not been convicted of a crime of violence or an otherwise serious offense." USCG Chap.1, Pt.A.4(d)(citing 28 U.S.C. §944(j). The Defendant does not pose a risk to the community, and possession of child pornography is not considered a violent offense. United States v. McBroom, 124 F.3d 533 (3rd Cir. 1997)(remanded on other grounds). All of the factors in this case clearly meet the standards set forth in §5K2.20, and a downward departure based on the Defendant's aberrant behavior is warranted.

WHEREFORE, Gary Hertz requests that this Court grant a downward departure, pursuant to USCG §5K2.20, and sentence him to a term of probation, including as a special condition that he complete any therapy and counseling as may be required by the Probation Office, as well as any other special terms and conditions which the Court may deem appropriate.

                              Respectfully submitted,

                              MOSCOWITZ STARKMAN
                              & MAGOLNICK
                              Bank of America Tower, 37th Floor
                              100 Southeast Second Street
                              Miami, Florida 33131
                              Telephone: (305) 379-8300
                              Facsimile: (305) 379-4404

                              By: _____
                                  Norman A. Moscowitz, Esq.
Date: January 2, 2001             Fla. Bar No. 0765643

11

UNITED STATES v. GARY D. HERTZ                              CASE NO. 00-6259-CR-DIMITROULEAS

## CERTIFICATE OF SERVICE

I hereby certify that the attached Sentencing Memorandum and Notice of Request for

Downward Departure was served by first-class mail and facsimile this 2rd day of January, 2001,

upon AUSA Lawrence Bardfeld, Office of the United States Attorney, 500 E. Broward Blvd., 7th

Floor, Ft. Lauderdale, FL, 33394-3002 and U.S. Probation Officer Kathryn Gomez, 299 E.

Broward Blvd., Rm. 409, Ft. Lauderdale, FL, 33301-1168.


_____
Norman A. Moscowitz

## THE A & B PSYCHOLOGY CLINIC

Victoria Azrin Besalel, Ph.D.
Licensed Psychologist
5151 Bayview Drive
Ft. Lauderdale, FL 33308

December 29, 2000

Norman A. Moscowitz, Esq.
100 S.E. 2nd Street, Suite 3700
Miami, Florida 3313

Re: Mr. Gary Hertz

Dear Mr. Moscowitz:

As I have previously informed you, Gary Hertz is a client of my Clinic. He is being treated by me for depression, anxiety, his marital problems and other problems which may have caused him to resort to the use of pornography.

Since my last letter to you, Mr. Hertz has continued to be seen by me on a weekly basis. He has been conscientious in keeping his appointments and in following instructions which I have given him for dealing with his problems. I believe he is making genuine progress. He is a decent person who is capable of real growth and change. He has the capacity to move beyond the destructive behavioral patterns which led him to his current legal difficulties. Continuity in treatment is critical at this juncture. Therefore, it is essential that he continue the course of counseling and treatment which he has undertaken with me. Any disruption at this time will be very detrimental to him.

Sincerely,

Victoria Azrin Besalel, Ph.D.

Victoria Azrin Besalel, Ph.D.
Clinical Psychologist

SPECTRUM PROGRAMS, INC.

# Client Monthly Progress Report

Month  December  Year  00

Submitted To: ☐ Children's Services Board  ☐ Probation/Parole Office
☐ Adult TASC Services  ☐ Adolescent TASC Services
☑ Other (Specify)
  Court Official
Name/Title of Probation Officer/Court Officer, Case Worker, Etc.

Client's Name: Gary Hertz                Legal Status: Pending
Modality: BOPSU                          Entry Date: 12/1/00

|  | Very Good | Satisfactory | Unsatisfactory |
|---|---|---|---|
| Progress: 1. Overall progress | ☑ | ☐ | ☐ |
| 2. Attitude | ☑ | ☐ | ☐ |
| 3. Level of participation in program activities | ☑ | ☐ | ☐ |

Treatment Status: ☑ Active  ☐ Inactive (If inactive, date discharged ___/___/___)

Counselor Summary (Be specific, especially if unsatisfactory is checked. If "inactive," give reason(s) and recommendations)

Gary Hertz is a client at Spectrum Programs,
Inc. since 12/1/00. Mr. Hertz is participating in a drug/alcohol
program, under the care of Myself, Rhonda
Marks (primary therapist). Mr. Hertz has
demonstrated a willingness to remain drug
and alcohol free. Mr. Hertz appears extremely
motivated for Tx and has established a Tx
plan which includes relapse prevention.
As Mr. Hertz' therapist, I am respectfully
requesting he continue w/ his Tx to increase
chances a successful prognosis including decreasing
chance of recidivism! Please contact me for further info
if needed.

Rhonda Marks, M.S.

Counselor's Name (Print)

Rhonda Marks, M.S. 12.19.00
Counselor's Signature    Date

Spectrum Programs, Inc.
**SPECTRUM PROGRAMS, INC.**
2219 Hollywood Blvd., Ste.102
PhoneHollywood, Florida 33020    954.926.0203

M020  05/95

# PSYCHOLOGICAL ASSOCIATES OF MIAMI, INC.
# DR. LEONARD HABER, P.A.

2125 Biscayne Boulevard • Suite 200 • Miami, Florida 33137-5029
Telephone: (305) 573-7373 • Facsimile: (305) 576-9700 • E-mail: LHaberPhD@aol.com

## PSYCHOLOGICAL EVALUATION REPORT
### PRIVILEGED AND CONFIDENTIAL

December 5, 2000

Norman Moscowitz, Esq.
Bank of America Tower
100 Southeast 2nd Street
Suite 3700
Miami, FL    33131

> Re:    **HERTZ**, Gary
> DOB:    12/21/51- 48 y/o
> CC#    00-6259-CR-Dimitrouleas

## REFERRAL DATA:

Mr. Hertz was referred to this examiner by Attorney Norman Moscowitz for psychological evaluation relative to an upcoming sentencing hearing involving a request for consideration by the court for downward sentencing departure based on paragraph 5K2.20. Mr. Hertz was evaluated at Psychological Associates of Miami's office on November 22, 24, and 28 of 2000.

## EXAMINATION PROCEDURE:

Psychological Interview
Mental Status Examination
Bender Gestalt Visual Motor Test (BGVMT)
Bender Gestalt Recall Test (BGRT)
Minnesota Multiphasic Personality Inventory – Second Edition (MMPI-2)
House-Tree-Person Test (HTP)
Thematic Apperception Test (TAT)

The following documents were reviewed by this examiner prior to the preparation of this report:

Psychological Report from Dr. Victoria Azrin Besalel, Clinical Psychologist
Indictment
Plea Agreement

## PRESENTATION:

Mr. Hertz is a 48-year old Caucasian male who appeared his stated age. He entered the examining situation willingly. He presented as cooperative, alert, oriented, and respectful. His speech was articulate and gentle. He correctly identified the examining date and his location. He reported that he has recently discontinued use of Wellbutrin, an antidepressant medication that he has taken for the last year and a half. He reported no history of serious medical problems, episodes of unconsciousness or serious accidents or injuries. He presented as cooperative, pleasant, and polite.

## PERSONAL HISTORY:

Mr. Hertz reported that he was born in Miami on December 21, 1951 in a sibship of three brothers and two sisters. He reported that he has been married twice and is currently separated from his second wife. He has two children from his first marriage and none from his second. He reported no history of military service. He reported receiving his bachelor's degree in accounting in 1973 form Florida Atlantic University. He reported his occupation as a Health Care Consultant, and has been the president of several health care corporations. At the time of his arrest, Mr. Hertz was reportedly living in Pembroke Pines, Florida.

## MEDICAL/PSYCHIATRIC HISTORY:

Mr. Hertz reported seeing a psychologist and psychiatrist after his office was searched for evidence regarding his case. He reportedly saw the psychologist once a week for approximately twenty weeks. He said he was seen by a psychiatrist for five months on a monthly basis, during which time he was placed on Prozac for symptoms of depression. Prior to this, Mr. Hertz reported no history of psychiatric treatment or hospitalizations, although he reported being under increasing stress and depression relative to business reversals, lack of funds, imminent loss of his assets, and marital stress prior to the time of his introduction to child pornography Internet sites.

## CRIMINAL HISTORY:

Mr. Hertz reported no previous arrest history.

## SUBSTANCE ABUSE HISTORY:

Mr. Hertz reported a long history of substance abuse. He reported that he began drinking in his 20's and drank "almost daily." He reported often drinking to the point of intoxication, particularly when under a significant amount of stress. He reported that alcohol is an "escape" for him. Mr. Hertz

reported that he began to use cocaine sporadically for about three to six months in 1984 after the death of his brother, who died from a drug-related suicide. He reported that in 1998 his use of cocaine resumed after having stopped for about thirteen years, and that between March 1998 and December 1999 he was using approximately three grams of cocaine about once per month. Mr. Hertz also reported a familial history of substance abuse and depression.

## EXAMINATION RESULTS:

Mr. Hertz was cooperative with this examiner and maintained a pleasant demeanor during the evaluation. Eye contact was good. Mood and affect were appropriate. Speech was productive. He was oriented to time, place and person. He demonstrated adequate memory for recent and remote events. He demonstrated thought processes that were productive, goal oriented and without significant evidence of tangential or circumstantial reasoning. There was no significant evidence of loosening of associations or ideas of reference. His fund of general information was adequate.

Mr. Hertz reported no significant paranoid, suicidal or homicidal ideations, hallucinations or delusions. He reported feeling depressed, particularly feeling as if he has "no energy." He complained of hypersomnia. He reported that he "needs" more sleep lately than he usually does. He reported no appetite disturbance but said he has gained about ten pounds since living with his mother for the last three weeks.

Mr. Hertz worked on the Bender Gestalt Visual Motor Test (BGVMT) for eight minutes, a time frame a little above average as compared with other people of his age. He commenced his drawings on the center of the page and required two separate sheets of paper to complete all nine designs. Most people commence drawing on the upper left-hand corner of the page and work their way down in an orderly manner on the same page. His drawings were large compared to the original designs. Mr. Hertz's drawing of the first design in the center of the page and his larger than normal duplication of them indicates an expansive personality trait. There was no significant evidence of collision, perseveration or rotation. He drew from memory (BGRT) six of the original nine test designs indicating average memory recall for these recent events.

Mr. Hertz's responses to the test questions on the Minnesota Multiphasic Personality Inventory (MMPI-2) reflected a valid profile. He completed the entire inventory by properly marking true or false to all the test items. No validity or clinical scales were significantly elevated. His personality profile did not suggest significant psychopathology. His results reflect a picture of a person who views himself as happy, healthy and contented. He may have a Pollyannaish outlook, which may be masking underlying depression.

On the Thematic Apperception Test (TAT), in which an individual is asked to create a story from a group of cards with pictures on them, Mr. Hertz displayed themes of a desire to help others, need for encouragement from others and a tendency to keep his thoughts and problems to himself in fantasy and daydreams.

When asked about the events that led to his arrest, Mr. Hertz readily accepted responsibility for his actions. Mr. Hertz was remorseful for what he had done. He characterized his actions as "stupid" and stated that he regrets his actions. He now realizes that they were harmful. During the interview Mr. Hertz reported a pattern of handling stress and stressful situations by escaping them through the use of alcohol and drugs. He reported that this pattern of coping began when his brother committed suicide in 1982. Mr. Hertz reported that he began to view child pornography for the first time in January 1999 when it was introduced to him by one of his clients. He reported his initial reaction was being "freaked out that this stuff existed" and that his interest was from the "novelty of it." He reported that at that time he was under significant financial, business, social, and family stress, at which point he began abusing alcohol daily to "escape." Mr. Hertz reported that he eventually began to view the pornography in question as another means of mentally escaping his problems. He reported that prior to his introduction to child pornography, he had never seen, nor was ever interested in such material. He reported that he has not viewed nor has had any interest in viewing child pornography since his arrest.

## RISK ASSESSMENT:

In regard to potential for violence or dangerousness, Mr. Hertz fits few of the actuarial factors associated with increased risk potential. Risk assessments rely on an accurate history reported by the defendant and others, and it could change if the facts are different than those presented. In risk assessments, there is no way to rule-out the possibility that a person may act out or engage in violent or criminal behavior at a future date.

History of violence or criminal behavior increases the risk potential. Mr. Hertz reported no violence or previous arrest history.

Males are at higher risk than females for violence, and younger males are at higher risk than older males. Mr. Hertz is 48 years old.

Those with extensive substance abuse history are at greater risk than those without such a history. Mr. Hertz reported a history of alcohol abuse dating back to his 20's, and "sporadic" use of cocaine from 1982 to about 1999. He also reported a family history of substance abuse.

Individuals in lower socioeconomic situations are at greater risk than those at a higher standard of living. Mr. Hertz has been successful for the majority of his career up to the time of the alleged offense.

There was no significant indication of major mental disorder, active psychotic processes or command hallucinations at the time of this examination. All of those would qualify as high risk factors if they were present.

Mr. Hertz's profile does not suggest a risk potential for violence or dangerousness, with the exception of his propensity for abuse of alcohol and drugs.

With regard to risk of repeat offense, Mr. Hertz has no reported prior history or interest in child pornography. He reported no such current interest. He is painfully aware of the "stupidity" of his mindless actions and the certainly painful consequences of a repeat offense. His risk for re-offending is not regarded to be high and is reduced in accord with the above-listed factors.

## COMPETENCY:

Mr. Hertz reported his charges to be "possession of child pornography" and reported them to be "very serious." *Mr. Hertz's appreciation of the charges filed against him and their seriousness was rated as acceptable.*

Mr. Hertz said that if convicted of such charges, a person could "get up to five years in prison" *His appreciation of the range and nature of possible penalties was rated as acceptable.*

Mr. Hertz correctly identified the function of key members within the criminal justice system. He said that the jury decided "guilt or innocence." He reported that the judge decided the "sentence" received. He identified his attorney as being "for him", and the state attorney as being "against him." *His understanding of the adversary nature of the legal process was rated as acceptable.*

Mr. Hertz was able to give this examiner a cohesive and detailed account of the events leading up to his arrest. *His capacity to disclose to his attorney pertinent facts surrounding the alleged offense was rated as acceptable.*

Mr. Hertz presented as cooperative, polite and forthcoming. He may exhibit similar demeanor in a Court setting. *His capacity to manifest appropriate Courtroom behavior and testify relevantly was rated as acceptable.*

## CONCLUSION:

Based upon examination results and available information, Mr. Hertz presented as a cooperative and articulate individual who reports remorse for his actions. The stress of impending bankruptcy, loss of all assets, plunge from wealth to poverty, and significant marital problems, combined with poor coping skills, such as substance abuse and escapism, impaired his judgment. These intentional but mindless distractions, which occurred when in a distressed state are now understood by him as "stupid" and harmful acts.

**Dr. Leonard Haber**
Psychological Evaluation Report

Based on psychological evaluation and available information, Mr. Hertz's criminal behavior is deemed to have been aberrant behavior engaged in at a time of significant financial, marital and lifestyle stress. Mr. Hertz denied such behavior prior to or subsequent to the time span of the alleged offense.

The alleged offense did not involve bodily injury or death. Mr. Hertz did not discharge or have a firearm or any other weapon. The offense does not involve drug trafficking, serious or otherwise. Mr. Hertz has no known prior criminal history. Mr. Hertz has no known federal or state felony or any other criminal convictions. Mr. Hertz has reportedly lived an otherwise law-abiding life. Mr. Hertz's actions are believed to have been undertaken at a time of significant mental and emotional distress and were "stupid" and mindless acts meant to distract him, rather than planned out, organized acts, intended to implicate others or do further harm.

For the above stated reasons this examiner respectfully recommends Mr. Hertz for the Court's consideration for downward departure based on §5K2.20.

Thank you for the opportunity to evaluate this interesting person and to be of service to you. If there is any other way in which I can be of assistance, please do not hesitate to call on me.

Leonard Haber, Ph.D.
Licensed Psychologist
Florida License Number 2257
New York License Number 2756 (Inactive)

*I, Dr. Leonard Haber, certify that I personally conducted and/or prepared this report and all conclusions reflected are those of this expert and not those of any third party; I further certify that the preparation of this evaluation was performed consistent with Chapter 490, Florida Statutes as well as with rules and regulations promulgated pursuant thereto.*

CINDY T. HERTZ

December 20, 2000


Honorable William Dimitrouleas
United States Courthouse
299 East Broward Boulevard
Fort Lauderdale, FL 33301

RE:    GARY D. HERTZ

Dear Judge Dimitrouleas:

I am writing to you on behalf of Gary Hertz, who is my ex-husband. Gary and I met in College in September of 1969. We were together all through college, and married in September of 1974. Our first daughter, Shanna, was born in March of 1979; and two years after, I gave birth to our second daughter, Vanessa. Although Gary and I divorced at the end of 1992, after 18 years of marriage, we remain on amicable terms. I am currently an officer of Adhesive Tape Products, Inc., a tape converting and wholesale distributing company in Miami, in which I am a 30% shareholder, and to which I devote 100% of my time. Although this is a small company with about $7 million in revenues, we are profitable, have an excellent credit rating and a good reputation in our market with distributors, vendors, and competitors alike.

I believe I know Gary better than most people, and can be considered a reliable character witness for him. He is basically a very honest and responsible person, of good moral character. Although I am aware of the crime with which he is charged, and my opinion seems to be a direct contradiction, I am still standing firm on my belief. He has always been a good father to our daughters, was always prompt in his child support and alimony payments, and our daughters have always relied on him for moral support and guidance. Our daughters are very well adjusted young ladies, and have shown to me they have good judgment and high principles. Both of them were in "gifted" and "honors" classes all through school, and both are attending college on academic scholarships. I know that Gary's mother and sisters have always depended on and looked up to him, knowing that he would always be there to help them through whatever troubles they might face. Of all the brothers and sisters (I was close to the family for a very long time, and knew both Gary's brothers before they died), I honestly believe that Gary was the least selfish and most giving of them all.

I do not know what prompted Gary to do what he did, but I am sure he feels remorse, and knows what he did was wrong. How do I know this? Well, the day after his computer was confiscated, he called his daughters, and asked them to go to their grandmother's house as he had something terrible to tell them. He suggested they pack an overnight bag, as they would probably not be in good enough shape to drive home after they heard what he had to say and would want to spend the night with their grandmother. My daughter, Vanessa, was extremely worried, and had to come to my room to talk to me and tell me of the conversation. I must admit she got me worried, so

Honorable William Dimitrouleas                                    December 20, 2000
United States Courthouse
Page 2

I asked her to call me as soon as she found out what her dad had to say. Vanessa called me that very night. I remember being angry with Gary for sounding so melodramatic and getting us so unnecessarily upset, as we had thought he was going to tell them he was dying of some dreaded disease. I believe Gary was more miserable and distraught with what his girls would think of him when they found out what he had done and whether they would ever want to see him again, than the legal consequences this would entail. When the girls gave Gary some type of indication that they didn't think what he had done was all that bad, he told them what he had done was very wrong, illegal, immoral, and totally incorrect.

Your honor, I am very conservative, and a person of extremely high morals. In all the years I have known Gary, he has never exhibited any tendencies remotely perverse or immoral. I feel absolutely certain that Gary would never intentionally hurt another person or do anything really evil. I believe this was just a short phase in his life, when he was going through troubling times personally, financially and professionally, that he somehow lost his good judgment and did something totally atypical. He is fundamentally a very good and kind person, a person one can count on in times of need, and I would respectfully request that you take what I have stated in this letter into consideration when you deliberate on his punishment / sentence.

Respectfully yours,

Cindy T. Hertz

7115 S.W. 69 COURT • MIAMI, FL • 33143
PHONE: 305-665-8999 (HOME) • 305-887-8881 (OFFICE) • FAX: 305-887-8884

Law Office of
**JOSE R. PUJOLS, P.A.**
2701 LeJeune Road, Suite 401
Coral Gables, Florida 33134

---

Jose R. Pujols, Esq.
E-Mail: Jrp1atty@aol.com

Telephone: 305-569-9533
Facsimile: 305-447-0405

December 8, 2000

Honorable William Dimitrouleas
United States Courthouse
299 East Broward Blvd.
Fort Lauderdale, Florida 33301

**Re:    Gary D. Hertz**

Dear Judge Dimitrouleas:

I am an attorney with a private practice in Miami-Dade County. I live in Broward County and have known Gary D. Hertz since 1992. I had the pleasure of first meeting Gary eight years ago when I provided part-time in-house legal services for his employer. Since that time, Gary has become a good personal and family friend. In fact, he had dinner at our house last Sunday, December 3, 2000.

It was good to see Gary again. Since he moved to North Carolina, we missed his sense of humor. Gary is a warm, generous, engaging and gentle person. Not to mention he is a good entertainer when given the chance to play the piano. Some of his paradies are priceless. As long as I have known Gary, he has never exhibited any characteristic tendencies which would be contrary to his non-violent and gentle good nature. I was best man at his wedding some three years ago and have nothing but the utmost respect for Gary.

When confronted with a challenge, Gary always meets the challenge head on and accepts full responsibility in order to move past any difficulties. I am aware of the crime with which Gary has been charged, together with the fact that he is awaiting sentencing. Notwithstanding that fact, my opinion of Gary has not changed. He is still an incredibly wonderful human being with great potential. My children enjoy playing with Gary and my wife is always laughing whenever she speaks to Gary on the phone.

I know Gary's two daughters, Shauna and Venesa. They are wonderfully intelligent young adults with fantastic futures as a result of the wisdom and values that Gary has instilled in both of his girls. Whenever someone has ever needed any assistance Gary has always been there for them. In fact, several years ago he introduced me to some clients of mine during a time when my practice was slow due to a change of clientele. He completely gave of himself in order to help me obtain new clients to keep my practice thriving. I owe him a debt of gratitude for his help. I hope this letter helps to shed some light on who Gary is and the type of person that is before your Honor's court.

Honorable William Dimitrouleas
December 8, 2000
Page 2


I would ask that your Honor consider this letter in Gary's case. If I can be of any further assistance, please do not hesitate to call me. My office number is (305) 569-9533 and my cellular number is (305) 785-3690.

Very truly yours,

JOSE R. PUJOLS

# BAYVIEW THERAPEUTICS OF MIAMI, INC.

Community Mental Health Center
7105 Collins Ave.
Miami Beach, FL 33141
Tel: (305) 759-3897 Fax: (305) 866-8170

December 21, 2000

Honorable William Dimitrouleas
United States Courthouse
299 East Broward Blvd.
Fort Lauderdale, FL 33301

RE:    Gary D. Hertz

Dear Judge Dimitrouleas:

As a person born and raised in the Miami Beach community, I now am able to return services to the community, which has offered me so much.

For the past 4 years plus I have been the Chief Executive Officer and the Program Director for Bayview Therapeutics of Miami, Inc.; and active in a wide range of community based activities. As a Community Mental Health Center, Bayview offers a comprehensive array of services for children, the elderly, the chronically mentally ill, and persons returning to the community following inpatient psychiatric hospitalizations. Bayview provides behavioral assessments, and family and individual counseling for individuals referred through the Miami Beach FIRE Network. Bayview is a Full Service School Provider and a Dade Partner with Miami Beach Senior High School where Bayview provides counseling services to student and their families.

I am an active member of the Miami Beach Chamber of Commerce and a member of the chamber's Education Committee. I have been part of the Work Study Program at Miami Dade community College, where I have acted as the Assistant Judo Instructor for the youth program. I served on both the Florida Ambulatory Behavioral Care Committee and the National Association known as the Ambulatory Association for Behavioral Health Care. I have received several semesters of additional professional training through Nova University focused on teaching children with learning disabilities and emotional handicaps.

I know Gary for the past 4 years. I was introduced to Gary by Mr. Chris White, Bayview's Attorney. Gary, being with me in the business with a computer for cost based accounting. Gary also provided accounting services for Bayview through Millennium Business Alliance. I met Gary when Bayview had been open for approximately 6 months. At this time Bayview had exhausted almost all of its capital. Gary began staffing Bayview at this time through his company On-Track Staffing Corp. Without On-Track Bayview would probably have closed and filed bankruptcy.

I have had dinner with Gary and his wife and daughters many times as well as stayed over with my fiancée at Gary's home in Weston. I admire Gary for his knowledge and wisdom in the Medicare field and his overall business savvy. At times Gary, not officially, acted as a mentor to me. Of the times spent with Gary, he has behaved in a professional, and calm manner. Matter of fact over the entire 4 years I have never heard Gary raise his voice at anyone. Victoria, who is my only partner at Bayview, refers to Gary as Bayview's savior, as if it weren't for Garys' confidence and generosity, Bayview may not be here today.

Gary has shared with me his current situation. First, he filed bankruptcy for his businesses as many of his clients took advantage of his generosity and failed to pay Gary and his company for the many

valuable services provided. Second, he began having marital problems, which he did disclose to me often, ultimately ending in separation. Lastly, I am aware of the incident regarding the Internet and his crime of child pornography, and that he is awaiting sentencing. In the event Gary is placed under supervised release or probation, it would be an honor to continue to use Gary's expertise in the Medicare field at my business. I feel he is aware of what he did and is remorseful.

Please feel free to contact me personally if you should have any questions regarding this letter.

Sincerely,

David Gotlinsky
Chief Executive Officer




Health Management Consultants

December 15, 2000

Mr. Norman A. Moscowitz
Moscowtiz, Starkman & Magolnick
NationsBank Tower, 37th Floor
100 SE Second Street
Miami, FL 33131

Dear Mr. Moscowitz:

Per your request, I am submitting a letter to Judge Dimitrouleas to your attention
regarding Gary Hertz.

Should you need any further assistance, please feel free to contact me.

Sincerely,

David A. Nesslein
President

DAN:cml





Health Management Consultants

December 15, 2000

Honorable William Dimitrouleas
United States Courthouse
299 East Broward Blvd.
Ft. Lauderdale, FL 33301

### RE: GARY HERTZ

Dear Judge Dimitrouleas:

I am writing you regarding a friend and colleague of mine, Mr. Gary Hertz. Gary was employed by my company from 1974 through 1986 working his way up from the Accounting department to the Chief Financial Officer. He was an excellent employee who was conscientious, hard working and maintained the highest degree of integrity. Gary, while in my employ, would go the extra mile to help out subordinates, whether it is with work related issues, or just being a good listener to the staff's personal problems. Throughout the years, I have never seen Gary raise his voice or hand to anyone.

Over the years of working with Gary, a friendship developed and I was able to meet his wife Cindy. I watched Gary interact with his two daughters. He was a kind and loving parent putting extra effort into raising his children. Many a night Gary would work late in the office, rush home to his family and work with his children on homework and school projects. Both of Gary's children are grown and planning on college and their future education. I believe it was Gary's input in the early years of the children's education and his positive roll model that created two fine adults.

Judge Dimitrouleas, I understand Gary violated a statute and is awaiting sentencing for that violation. I can only say that of all the individuals I have known throughout the years, Gary is one of the finest, upstanding, genuine persons I have ever met. He is a positive benefit to our community and an asset to our society in whole.

I would be happy to speak to you personally should you so desire.

Sincerely yours,

David A. Nesslein
President
Health Management Consultants, Inc.

DAN:cml

December 17, 2000
6464 S.W. 31 Street
Miami, FL 33155

Honorable Wm. Dimitrouleas
U.S. Courthouse
299 E. Broward Blvd.
Ft. Lauderdale, FL 33301

Re: Gary D. Hertz          VIA FAX #305-379-4404

Honorable Judge Dimitrouleas:

My name is Pia Giorgione and I am currently working as a medical transcriptionist.

I came to know Gary Hertz in 1975 at a home health agency then known as Unicare, now Mederi, Inc. My position there was as Executive Secretary to the owners of the agency, Ms. Sandra Kastrup and her brother, Mr. David Nesslein. Gary held the positions of Accountant and then Comptroller. I assisted him in matters that necessitated correspondence and other clerical duties.

Gary and I worked together for approximately 11 years during which time we developed a close relationship. During this period, Gary was married to Cindy Hertz (his first wife) of whom he spoke well, including his two lovely daughters. I was invited to Gary's home for a housewarming in Coral Gables. Cindy was a lovely, refined hostess.

Gary is a gregarious, outgoing, humorous and warm individual. He has never demonstrated any violent tendencies at work or toward his family. At work, we have always found him to be exceptionally knowledgeable and easy to get along with. He was always willing to discuss my personal problems and offering his best advice. I did not know of any difficulties that Gary would have had at home. In this same context, Gary was available to other employees in like manner. He sincerely tried to help people and enjoyed verbal bantering.

I am aware of Gary's charges concerning pedophilia as it pertains to the Internet. As long as I have known him, however, Gary is not the type of person who would indulge in such activities. Knowing him and his family as well as I do, Gary would not accede to anything dishonorable and I hope and pray that a light sentence would be in order. I trust the above character description of Gary Hertz will assist you in understanding him.

Very truly yours,

Pia Giorgione

DEC 2 2

# AMENITIQUE
For Quest Amenities

Bangkok        Copenhagen        Hong  Kong        London        New  York

December 20, 2000

Honorable William Dimitrouleas
Unites States Court House
299 East Broward Blvd.
Fort Lauderdale, FL 3301

Re: Gary D. Hertz

Dear Judge Dimitrouleas:

I am a Swedish born resident of the US since 1985. My resume is enclosed.

About 25 years ago when I was President of Atlas Copco in Venezuela I started dating my
wife Anita. Her sister Cindy with husband Gary Hertz then came visiting Caracas. I then
became a frequent visitor to their home in Miami and enjoying their friendship and warm
and kind hospitality. After Anita and I married in 1981 we got closer and since we moved to
Tampa in 1985 we have spent a lot of time together.

Having had literally thousands of people working for me and having to deal with people
from all walks of life in many different countries,  I think I know Gary Hertz well enough to
say that he is an easygoing, well tempered, humorous and caring person with a strong feeling
of responsibility.

He has always cared a lot for his mother, his late brothers and his sisters, all whom I know
well. The affection for his mother, who has had to live through too many sorrows, is shared
by my sister in law. After the divorce from Gary, she has maintained the same close relation
to her as before.

Gary is very devoted to his daughters to whom their parents divorce came as a shock. They
had never, as so often is the case, been witnesses to any bitter arguments or any violence of
any kind.

Gary has always been prepared to help people around him. I received a lot of inside into US
labor law and business practices from him when coming to live and work in the US.

I also know that he (and Cindy) lent money from their little savings account to Cindy's boss
when his business faltered.

Honorable William Dimitrouleas
December 20, 2000
Page Two

During the last years my contacts with Gary have not been as frequent as before, however, when he lived in Miami, whenever me and/or my family visited, we always met. That is why both my wife and I also came to know his second wife.

Gary's ways did not as far, as we have been able to see, change at all during the last few years.

I am aware that Gary has committed a crime for which he is eagerly awaiting sentencing.

Sincerely yours,

Bo G. Grektorp
President

BGG:sf

**Bo G. Grektorp**
4723 Cheval Blvd.
Lutz, Florida 33549
813 949 1787 (H) 813 884 8008 (W)

---

## PROFESSIONAL

| | |
|---|---|
| **1993**<br>to present | **PRESIDENT, FOUNDER AND PRINCIPAL, AMENITIQUE INC.** ·<br>Board member of Scandinavian Amenities A/S<br>Board member and Principal in Gladstone's Grilled Chicken |
| **1989 - 1993** | **PRESIDENT, FOUNDER AND PRINCIPAL, CITY TOWERS OF FLORIDA INC.**<br>a Real Estate Company with a Portfolio of more then US $ 250 Million. |
| **1985 - 1989** | **PRESIDENT, FOUNDER AND PRINCIPAL, PROFUNDO INC.,** developer of **CHEVAL GOLF & COUNTRY CLUB,** a Luxury Development with two Golf Courses, Polo Fields, Tennis Club, Restaurants and 1900 Luxury Homes. |
| **1981 - 1985** | **PRESIDENT AND PARTOWNER MICRODRILL INC.,** a Swedish based International Oil Drilling, -Logging and Production Company with Subsidiaries in France, Great Britain, Switzerland, Panama, Costa Rica and Venezuela. |
| **1982 - 1955** | **CO-FOUNDER AND BOARDMEMBER OF SCANDINAVIAN PETROLEUM** an Oil Company since 1982 on the London Stock Exchange, now under the name **GAELIC PETROLEUM** |
| **1981 - 1986** | **CO-OWNER AND BOARDMEMBER OF BORRINGENJOERERNA AB,** Scandinavia's leading Drilling Company. |

**Resume Bo G. Grektorp**
**TAMPA FLORIDA 04/01/98**

**PROFESSIONAL ( _CONTINUE_ )**

| | |
|---|---|
| 1964 - 1981 | **THE ATLAS COPCO GROUP,** The World's Leading Manufacturer of Compressed Air Equipment. |
| 1981 | **DIRECTOR FAR EAST AND MEMBER OF MANAGEMENT GROUP ATLAS COPCO MCT AB SWEDEN** |
| 1975 - 1981 | **PRESIDENT ATLAS COPCO VENEZUELA BOARD MEMBER OF VARIOUS ATLAS COPCO COMPANIES IN LATIN AMERICA.** |
| 1971 - 1975 | **PRESIDENT ATLAS COPCO ARGENTINA** |
| 1969 - 1971 | **DIRECTOR OF MARKETING ATLAS COPCO PORTUGAL** |
| 1966 - 1969 | **DIRECTOR OF MARKETING ATLAS COPCO INTERNATIONAL** overseeing 12 countries stationed in Stockholm, Singapore and Miami. |
| 1964 - 1966 | **PRODUCT MANAGER ATLAS COPCO AB SWEDEN** Worldwide responsibility for Rock Drill Sales. |

**OTHER**

| | |
|---|---|
| 1990 - 1994 | **BOARDMEMBER OF SCANDINAVIAN TASK FORCE TAMPA CHAMBER OF COMMERCE** |
| 1977 - 1981 | **BOARDMEMBER OF BLANCO URIBE & ACCOCIATES,** a Leading Full Service Advertising Agency in Caracas, Venezuela. |
| 1976 - 1981 | **BOARDMEMBER OF SWEDISH TRADE OFFICE CARACAS VENEZUELA** |

**EDUCATION**

| | |
|---|---|
| 1966 - 1967 | **Advanced Management Course Stockholm Sweden.** |
| 1965 | **MBA in Marketing and Finance, Hermods Malmoe, Sweden** |
| 1963 | **Mining Engineer at Skellefteae, Sweden** |

**Resume Bo G. Grektorp**
**TAMPA FLORIDA 04/01/98**